Case No. 25-1003 Heroes Technology US LLC doing business as Snuggle Me Organic Petitioner v. Consumer Product Safety Commission Ms. Rawlings for the Petitioner, Mr. Shi for the Respondent Good morning, Council. Ms. Rawlings, please proceed when you're ready. Thank you, Your Honor. And may it please the Court. My name is Kara Rawlings of the New Civil Liberties Alliance on behalf of the Petitioner. I've requested one minute for rebuttal. This case is about agency power and regulatory shortcuts. Infant safety should never yield to administrative convenience, yet that is what happened here. Instead of promulgating the infant support cushion rule under the Consumer Product Safety Act's more thorough and comprehensive general rulemaking processes, the Commission instead chose to regulate these products under the abbreviated regulatory process permitted for select infant and toddler goods. The problem with the CPSC's rulemaking approach, however, was that Congress never authorized CPSC to regulate infant support cushions under 15 U.S.C. 2056a, which only applies to durable infant or toddler products. Infant support cushions, as evidenced by the definition in the regulation, are not durable infant products within the meaning of 2056a. If I may take a moment, I'd like to describe my client's product, as I believe it will be helpful for our discussion today. The Snuggle Me Infant Lounger is roughly two and a half feet long by a foot and a half wide. It features a padded bumper and an unpadded sling. What happens is that when you place the infant into the internal sling, it has a hammock-like effect and has the effect that mimics that the baby's being held. It's meant to be a second set of hands for parents when they're eating a sandwich, folding laundry. And as the Commission itself has admitted, products like my client's have utility for parents. Yet, they regulated these products under 2056a, regulatory shortcut, and effectively, for my client's product, removed them from the market altogether. Since 2007... Can you identify in the record where your client in the rulemaking process made this statutory authority objection? Yes, Your Honor. That actually occurs, and I apologize, I have to look at the exact... Sorry. In their comment, and this is at, I believe this is at JA-428, Note 3, JA-434, JA-438, and JA-442. This is their comment. I read through that comment, and I don't see this objection made. Can you point me to specific language where they said that this can't be regulated as a durable infant and toddler product? With respect to the 180-day period, and this is in the comment too, they say that one of the challenges is that these products do not fall under Section 104. And that's in the rule itself. The Commission recognized that both BAPI and Heroes Technology said that these do not fall under 104 because there wasn't a voluntary standard in place. Now, we've not maintained that challenge on appeal here. That's foreclosed by this Court's decision in FinBIN, but they did say in that comment that these products did not fall under that rule. And critically, I think, Your Honor, what you're getting at is the question of waiver, which my friends on the other side have raised. This is a question of statutory interpretations about agency power. This Court has routinely, as well as others, have said that when it goes to core powers like this, and it's just a matter... It's a substantive question of what the statute does or does not permit, that it's not necessarily waived and the Court can hear the challenge. We believe that it is not waived. We believe that this Court's case law suggests that where is here. There's also a Supreme Court case law and case law from our circuit that says that if you don't raise a specific challenge in the rulemaking process, it's forfeited. Well, I believe one of those concerns is that then it doesn't give fair notice to the agency. In this instance, this exact challenge was raised by Boppe, another manufacturer, and that they did have the opportunity to consider it and actually did. It's in the comments they did respond to, and they said, no, we do have the power. I look at Boppe's comments, and I don't see them making this specific challenge, which is that this isn't a durable infant and toddler product. Boppe's challenge is that pillow-like products, textiles, do not fall under 2056A. And that's consistent with, I mean, now we've added more to explain why that is. We've provided dictionary definitions of that, but I think Boppe's comment is very clear. They say pillow-like products, textiles, are not covered under 2056A's powers. I mean, is there any way, is there anything about this rulemaking or the nature of the underlying statute that can be distinguishable from our waiver cases like Delaware, South Coast, and Southern Pacific? Yes, Your Honor. I think one of the things that comes out in the Delaware case is that was under the Clean Air Act's limited judicial review provision. And as I understand that particular provision, it explicitly is that you have to raise it in the proceeding. Some of the more generalized APA cases, as this is, suggest that if the issue is raised before the agency and it is addressed by the agency, then it can be raised on appeal by any party. And that is exactly what we have done here. And the other thing with the Delaware Natural Resources case is that, apologies, I lost my train of thought, is that in addition to being a Clean Air Act case, one of the things that the court says in that is, well, we're going to look at sort of the whole of the comment. And is it inconsistent? Now, if you were completely for the rule before, it would be inconsistent to come here and challenge the rule after the fact. But I think the clear thrust of my client's comment to the agency is that they did not support the rule at all beyond the registration statement, which, mind you, as we say both in the comment and elsewhere, they already had in place a voluntary registration process and notification process to allow consumers to know if there are sort of subsequent concerns about the product. So it's not really that much of a surprise that they would say, hey, we have no problem with this one aspect, that you're going to make us do something that we're already doing. But I do think that if you look at the overall comment on balance, it is clearly opposed to the rule. And I believe that the — Your client said at JA-427, we support CPSC's proposed amendment to add infant loungers to the list of durable infant products that must comply with the product registration requirements in 16 CFR Section 1130. Did I say that correctly? Yes, Your Honor. So why isn't that forfeiture or waiver? Again, Your Honor, what the Delaware Department of Natural Resources says is we look at the comment on balance. And again, on balance, there are other statements in the comment that suggest that our client believed that these weren't durable infant or toddler products. For example, as I mentioned, JA-428, when our client talks about that there was a failure to provide risk-benefit analysis, risk-hazard analysis, and consumer choice analysis. Those are all requirements that would have come into play under Section 2058. And so on balance, there were concerns that what the commission was doing here wasn't in conformity with the statute and the regulatory requirements themselves. I was asking if the comment says the proposed amendment is to add infant loungers to the list of durable infant products. Let's just stop there because it did say that. Is that consistent with saying that as a statutory matter, it's not a durable infant product? How can it be added to the list of durable infant products if it doesn't fit within the statute's allowance for regulating durable infant products? I think it needs to be read in context with added for purposes of registration. And again, I believe it's the next line after that. Our client goes on to say that they already have a voluntary registration process in. I think one way to look at that is they're saying we're not concerned about this particular aspect, this particular requirement of what you're putting onto us, and we're not going to comment on that because we already have this. Now, when we look at the 180-day comments, this is later in it, one of the things that they raise is the problem here is these products are not durable infant goods under 104, and the 180-day effective date is not sufficient. And so I do think that there's at least internal inconsistency within the comment itself, and consistent with this court's prior determinations, it may hear this case because, again, it goes to poor statutory power. Ms. Valenzuela, even if you are able to get past the waiver and forfeiture point, what is your best statutory argument that this isn't a durable infant or toddler product? Because to me, I mean, from what I understand about what this product is, is it sounds a lot like the other items in the list of items that are included as durable infant products. I would actually distinguish it from those 12 in the product list. If you look at those items, what we're typically seeing are broader categories, furniture, products that are predominantly made with wood, metal, plastic, and we're looking at the overall durability and longevity of a product because, again, the definition, as we posited, is that durable infant-toddler products or consumer goods that last a long time without significant deterioration. These are textile products. They are – Is that a soft – oh, sorry. So is an infant carrier. So is a crib mattress, you know. So are parts of many baby and toddler swings, bassinets. I think that there's a critical distinction in that these are fully comprised of textiles as opposed to having component parts that may or may not have textiles. But a critical distinction with the sling carriers, for example, is that when those were adopted as a part of the durable infant goods standard, the commission looked at the 12 product lists and said this is like those because infant carrier is explicitly stated in the statute, and sling carriers are infant carriers. That was the analysis the CPSC adopted. What they have done here is that they have looked at their regulations for sling carriers and crib mattresses and called those soft durable goods, which is atextual. And, by the way, as we outline in our papers, soft durable goods, soft durables, semi-durables are non-durable goods. Your Honor, I see my time has expired. May I finish my response? Yeah. And so our point in regards to that is that there's a tacit understanding with the agency itself by calling these items soft durable goods and not comparing them to the statutory category list, that these are not durable goods themselves. We believe that we respectfully request that this Court vacate the rule. Thank you, counsel. We'll give you a little time for rebuttal, as you requested. Mr. Sheehy. May it please the Court, Mike Sheehy for the government. The statutory question in this case is straightforward. As petitioners comment before the agency illustrates, the key question is whether an infant support cushion is a durable infant or toddler product. And there's no dispute that the ordinary meaning of durable is able to exist for a long time without significant deterioration in quality or value. The Commission clearly explained why infant support cushions are durable under that standard. They're not disposable. They have a useful life of several years. They're often used by many children in a row, and they're resold and widely available on the secondary marketplace. And so the Commission's decision to regulate infant support cushions as durable infant or toddler products under the Act was reasonable. Are you forfeiting your forfeit, Your Honor? No, Your Honor. We think that, you know, as I noted at the very beginning of my presentation, if you look at that part of the comment that Your Honor quoted, Heroes Tech made very clear that they thought that infant support cushions were durable infant or toddler products when they said that they could be subjected lawfully to the product registration requirements. And that position is incompatible with the position that Heroes Tech is staking out now. The thrust of Heroes Tech's comments before the agency was a dispute over what the mandatory safety standard ought to say. And, you know, that is a separate question from whether the Commission has any authority to issue a mandatory safety standard at all. And the law governing when the Commission can issue a mandatory safety standard under the Danny Keyser Act is the same as the law governing when a product can be subjected to the mandatory product registration requirements under the Danny Keyser Act. Everything just ties into whether you are a durable infant or toddler product. And here, having taken that position, it would be odd to allow Heroes Tech to take the diametrically opposite position with respect to the agency's statutory authority. Your friend on the other side says that subsequent language in their comment made clear that they believed that there was a separate regulatory path that the Commission should follow outside of the durable infant and toddler product path. What's your response to that argument? It's honestly quite confusing to me, Your Honor. As the Commission understood that argument, it pertains to an argument that this Court rejected in the Finbin case about Section 104, as I think my friend on the other side recognized during her presentation. But that kind of oblique challenge to the Commission's authority doesn't step back from just the fundamental language that we've been discussing at the very first page of their comment, which makes very clear that they are, at least before the Commission, they were fine with the idea that infant support cushions could be durable infant or toddler products. In fact, they said, we support the proposed amendment to add infant support cushions to the list of durable infant or toddler products. Your friend on the other side says that VOPI made this objection, and so there's no fair notice problem to the Commission because at least someone, even if we were to conclude that Heroes Technology didn't make this statutory objection, someone did. And so there's really no prejudice to the Commission for us to hear this challenge. We were all noticed. That's true as far as it goes, Your Honor, but the cases discussing waiver before agencies have distinguished that situation from a different situation. And if you don't mind, let me try to set forth the two sort of strands here. There is a strand of case law saying that there is an exception to the party forfeiture rule under ordinary admin law principles if some party before the agency, not this specific commenter, has raised the issue. And so in a circumstance where somebody in a comment has said a thing, but the particular petitioner did not and just didn't say anything at all about it, this court has said, well, you know, that's fine. The agency was unnoticed. We will address that on the merits. That's distinct from what occurred here and the cases talking about waiver distinguish between the situation here and that situation I just described where one party did, in fact, raise the question of statutory authority. That was the VOPI company, and you can see the Commission's discussion of that at page 621 of the joint appendix. Here, Heroes Tech not only addressed that question but took the opposite position from VOPI because there's no way to reconcile a recognition that infant support cushions are durable infant or toddler products on the one hand with an idea that there's no regulatory authority under the Danny Keyser Act over infant support cushions at all. And in that circumstance, notwithstanding the fact that a different commenter did, in fact, raise the issue, the court has looked to, you know, basic principles of fairness. It almost sounds a little bit like a estoppel the way the court has discussed it to say that, you know, it just wouldn't make sense to allow. You know, one of the other cases, you know, that are cited for this waiver principle, they involve statutory schemes that have mandatory issue exhaustion, and we don't have that in this statute. And I wonder if that's a basis for distinguishing the waiver forfeiture question of a purely legal question as to the agency's statutory authority. It's true that there's no specific party presentation requirement in this statute, Your Honor. It's not clear why that would make a difference given the reasoning of the court's decision, which turned on just basic principles of, you know, fairness to the agency in the sense that a party that has prevailed on a particular legal dispute, namely, is there or is there not a statutory authority? Well, you know, the prevailing party question is interesting, too, because here I don't think the government is not contesting whether HEROES is actually aggrieved or harmed by this regulation. We are not. Whereas, you know, I don't think that was the same in those other cases. That's true, Your Honor. Like, this case is different from those cases. I think that is one way of distinguishing it as well. It is true. It is different from those cases in the sense that, you know, HEROES Tech still is aggrieved by the substance of the mandatory safety standard. And in those cases, at least, you didn't have that divide. And it's true, as far as it goes, that those cases, therefore, didn't have the opportunity to address a situation like this. It's not clear to me, though, why the analysis ought to be different, even if, you know, like HEROES Tech conceitedly, you know, did challenge a little bit of this rule, why they shouldn't, nevertheless, be held to the view of the statute that they articulated before the agency when that question was in dispute. We're not here saying, for example, that HEROES Tech can't bring their arbitrary, capricious challenges to the, you know, the content of the mandatory safety standard. And I'm happy to address those on the merits, if Your Honor would like. But with respect to the key statutory question, which is whether there is authority to regulate infant support cushions under the Act, it's really hard to look at the comment that HEROES Tech submitted before the agency and come to any conclusion other than they thought the agency did have that authority. And now that the agency has exercised that authority in a manner that they don't like, they have switched their position before this court. I take it the government doesn't take the position that we are bound, in a steel company sense or something like that, to do waiver forfeiture first, no matter what. I mean, in theory, we could say it's a close waiver question, there's no cross-currents, but because we want to get to the merits, we can just choose to do that anyway. You know, we haven't raised the argument that waiver is a threshold question along those lines, and the way this court has talked about waiver doesn't make it sound like a threshold question along those lines. But, you know, all we are pointing out is that the statutory question here is quite straightforward, and you don't just need to take our word for it, you can also take theirs. Does the forfeiture analysis, waiver analysis, has it changed because of the demise of Chevron? Because part of the rationale for it previously was, well, you need to give the agency an opportunity to respond and interpret the statute, and that interpretation might get some deference. But in the Loper-Briden rule, it doesn't, I mean, we don't ignore what the agency says, but it doesn't get the same type of deference. So does that weaken the reasoning for finding forfeiture here? It doesn't seem like it would, Your Honor, because those cases discussing waiver don't discuss waiver in the sense of, you know, we think the agency, you know, will then weigh in and then, you know, the court will then look to what the agency says and then give tremendous deference to what the agency said. The cases, as I said earlier, sound a lot more like, you know, they're invoking general estoppel principles of, you know, fairness and party presentation, and those principles were not at issue in Loper-Briden and clearly survived Loper-Briden. So it's not clear that Loper-Briden had any impact on, you know, this court's waiver doctrine. Thank you. Thank you, counsel. Thank you, Your Honor. Ms. Rollins, we'll give you the one minute that you asked for for rebuttal. Thank you, Your Honor. And I'd like to start with the last question regarding the demise of Chevron. This is an interesting regulation where it was proposed before Chevron was ended and finalized after. So I do think there's an aspect of futility, is that I think that, and the CDC has already argued, we have a reasonable interpretation of the statute. If we were standing here on different ground, it wouldn't be a surprise, I assume, that Chevron would have been invoked. And so in that regard, I do think that the demise of Chevron plays some role in the statutory interpretation waiver question. One thing that did not come up, and I was remiss not to mention it earlier, is that we raised this exact statutory interpretation question to CPSC in an administrative stay request of the rule. They said nothing. They simply denied the request. So it was raised to the commission prior to being raised to this court, and I know that's not true, but after the rulemaking? After the rulemaking. In the motion to stay the rulemaking after it was promulgated. Yes, Your Honor. But it was raised to this court, and there are some cases that we cite in our paper that say if there is some opportunity for the agency to respond, then there is no waiver. And there was a substantive response coupled with the fact that Boppe did raise this during the rule. I see my time has expired. Thank you, Your Honor. Thank you, counsel. Thank you to both counsel. Thank you. We'll take this case under submission.
judges: Srinivasan; Wilkins; Rao